UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER J.,[1] | ) | CIVIL ACTION NO. 4:22-CV-497 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| KILOLO KIJAKAZI, | ) | |
| *Acting Commissioner of Social Security* | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION**

## I.   INTRODUCTION

Christopher J. ("Plaintiff"), an adult who lives in the Middle District of Pennsylvania, seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying his application for supplemental security income under Title XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1383(c)(3).

This matter is before the undersigned Magistrate Judge on consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 9).

---

[1] To protect the privacy interests of plaintiffs in social security cases, we have adopted the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that federal courts should refer to plaintiffs in such cases by their first name and last initial.

Plaintiff argues that remand is required because the ALJ did not explain why a limitation to one- and two-step tasks was rejected and a limitation to simple tasks was credited. We agree. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, we find the Commissioner's final decision is not supported by substantial evidence. Accordingly the Commissioner's final decision will be VACATED, and this case will be REMANDED for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## II.    BACKGROUND & PROCEDURAL HISTORY

On May 14, 2019, Plaintiff protectively filed an application for supplemental security income under Title XVI of the Social Security Act. (Admin. Tr. 10; Doc. 12-2, p. 11).  In this application, Plaintiff alleged he became disabled on July 1, 2015, when he was forty years old, due to the following conditions: diabetes, Bipolar I, deteriorating disc, and PTSD. (Admin. Tr. 226; Doc. 12-6, p. 6). Plaintiff alleges that the combination of these conditions affects his ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, climb stairs, complete tasks, and concentrate. (Admin. Tr. 246; Doc. 12-6, p. 26). Plaintiff has a high school education. (Admin. Tr. 227; Doc. 12-6, p. 7).

On September 13, 2019, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 10; Doc. 12-2, p. 11). On April 23, 2020, the application was denied on reconsideration. *Id.* On June 25, 2020, Plaintiff requested an administrative hearing. *Id.*

On October 6, 2020, Plaintiff, assisted by his counsel, appeared and testified during a telephone hearing before Administrative Law Judge Mike Oleyar (the "ALJ"). *Id.* On January 12, 2021, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 33; Doc. 12-2, p. 34). On March 15, 2021, Plaintiff requested that the Appeals Council review the ALJ's decision. (Admin. Tr. 200; Doc. 12-4, p. 64).

On February 10, 2022, the Appeals Council denied Plaintiff's request for review.  (Admin. Tr. 1; Doc. 12-2, p. 2).

On April 1, 2022, Plaintiff filed a complaint in the district court. (Doc. 1). In the complaint, Plaintiff alleges that the ALJ's decision denying the application is "not supported by substantial evidence and applies an erroneous standard of law." (Doc. 1, ¶ 5). As relief, Plaintiff requests that the Court reverse the Commissioner's final decision or remand this case for further proceedings. (Doc. 1, ¶¶ 5(A) and (B)).

On June 13, 2022, the Commissioner filed an answer. (Doc. 11). In the answer, the Commissioner maintains that the decision denying Plaintiff's

application was made in accordance with the law and is supported by substantial evidence. (Doc. 11, ¶ 9). Along with her answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 12).

Plaintiff's Brief (Doc. 13), the Commissioner's Brief (Doc. 16), and Plaintiff's Reply (Doc. 17) have been filed. The Commissioner sought and was granted leave to file a sur reply. (Doc. 20). This matter is now ready to decide.

## III.   LEGAL STANDARDS

Before looking at the merits of this case, it is helpful to restate the legal standard relevant to our review. Therefore, we will discuss the limited scope of this Court's review of an ALJ decision, the five-step sequential evaluation process used to adjudicate claims at the administrative level, and guidelines for the evaluation of administrative medical findings.

### A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

A district court's review of ALJ decisions in social security cases is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[2] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable

---

[2] *See* 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

mind might accept as adequate to support a conclusion."[3] Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.[4] A single piece of evidence is not substantial if the ALJ ignores relevant countervailing evidence or fails to resolve a conflict in the record.[5] But in an adequately developed record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[6] In determining if the Commissioner's decision is supported by substantial evidence under sentence four of 42 U.S.C. § 405(g), the court may consider any evidence that was in the record that was made before the ALJ.[7]

---

[3] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[4] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[5] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

[6] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[7] *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001) ("when the Appeals Council has denied review the district court may affirm, modify, or reverse the Commissioner's decision, with or without a remand based on the record that was made before the ALJ (Sentence Four review)."). The claimant and Commissioner are obligated to support each contention in their arguments with specific reference to the record relied upon. L.R. 83.40.4; *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("parties . . . bear the responsibility to comb the record and point the Court to the facts that support their arguments."); *Ciongoli v. Comm'r of Soc. Sec.*, No. 15-7449, 2016 WL 6821082 (D.N.J. Nov. 16, 2016) (noting that it is not the Court's role to comb the record hunting for evidence that the ALJ overlooked).

The Supreme Court has underscored the limited scope of district court review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South, LLC v. Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; *see, e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).[8]

To determine whether the final decision is supported by substantial evidence, the court must decide not only whether "more than a scintilla" of evidence supports the ALJ's findings, but also whether those findings were made based on a correct application of the law.[9] In doing so, however, the court is enjoined to refrain from

---

[8] *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).

[9] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*,

trying to re-weigh evidence and "must not substitute [its] own judgment for that of the fact finder."[10]

Furthermore, meaningful review cannot occur unless the final decision is adequately explained. As the Court of Appeals has noted on this score:

> In *Burnett* [*v. Comm'r of Soc. Sec. Admin.*], we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d [112, 119 (3d Cir. 2000)]. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.[11]

## B.   STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

---

900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[10] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

[11] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

continuous period of not less than twelve months."[12] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.[13]

In making this determination at the administrative hearing level, the ALJ follows a five-step sequential evaluation process.[14] Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[15]

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[16] In making this assessment, the ALJ considers

---

[12] 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a).

[13] 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

[14] 20 C.F.R. § 416.920(a).

[15] 20 C.F.R. § 416.920(a)(4).

[16] *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1).

all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[17]

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work.[18]   Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.[19]

### C.   GUIDELINES FOR AN ALJ'S EVALUATION OF PRIOR ADMINISTRATIVE MEDICAL FINDINGS

Social Security records also often include RFC assessments made by state agency consultants at the initial and reconsideration level. ALJs are not required to adopt prior administrative medical findings, but are required to consider this evidence.[20]

---

[17]20 C.F.R. § 416.945(a)(2).

[18]42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. § 416.912; *Mason*, 994 F.2d at 1064.

[19] 20 C.F.R. § 416.912(b)(3); *Mason*, 994 F.2d at 1064.

[20] 20 C.F.R. § 416.913a.

The regulatory framework for evaluating prior administrative medical findings includes both factors to guide the analysis, and very specific articulation requirements that must be met in addition to the well-established requirements that apply generally to the ALJ's decision as a whole.

This regulation directs that an ALJ's consideration of the persuasiveness of competing medical opinions and prior administrative medical findings be guided by the following factors:

(1)   the extent to which the opinion or prior administrative medical finding is supported by relevant objective medical evidence and explanations presented by the medical source (supportability);

(2)   the extent to which the opinion or prior administrative medical finding is consistent with the record as a whole (consistency);

(3)   the length, purpose, and extent of the treatment relationship between the claimant and the medical source;

(4)   the examining relationship and frequency of examination;

(5)   the specialization of the medical source; and

(6)   any other factors that tend to support or contradict the opinion.[21]

The most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion.[22] Unlike prior regulations, under the current regulations, when considering medical opinions and prior administrative medical

---

[21] 20 C.F.R. § 416.920c(c).
[22] 20 C.F.R. § 416.920c(b)(2).

findings, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."[23]

The Commissioner's regulations also provide several articulation requirements. First, the ALJ is always required to explain how he or she considered the "supportability" and "consistency" of a medical source's opinion or a prior administrative finding. Second, the ALJ is only required to articulate how he or she considered the other factors if there are two equally persuasive medical opinions about the same issue that are not exactly the same.[24] Third, if one medical source submits multiple medical opinions, an ALJ will articulate how he or she considered the medical opinions from that medical source in a single analysis.[25] Fourth, an ALJ is not required to articulate how evidence from non-medical sources is considered based on the 20 C.F.R. § 416.920c factors.[26] Fifth, the ALJ is not required to articulate or provide any analysis about how he or she considers statements on issues reserved to the Commissioner or decisions by other governmental or nongovernmental entities.[27]

---

[23] 20 C.F.R. § 416.920c(a).
[24] 20 C.F.R. § 416.920c(b)(3).
[25] 20 C.F.R. § 416.920c(b)(1).
[26] 20 C.F.R. § 416.920c(d).
[27] 20 C.F.R. § 416.920b(c).

## IV.   DISCUSSION

Plaintiff raises the following issues in his statement of errors:

(1)     The ALJ erroneously failed to include the uncontroverted limitation to one- and two-step tasks within the residual functional capacity assessment; the ALJ erroneously failed to discuss or explain his basis for failing to include the uncontroverted limitation to one- and two-step tasks.

(2)     The jobs identified by the ALJ conflict with the DOT/SCO as it pertains to Plaintiff's ability to perform detailed tasks.

(3)     The ALJ's RFC assessment exceeds the limitations of all medical opinions of record and does not account for Plaintiff's marked limitation in the ability to understand, remember or carry out detailed instructions.

(Doc. 13, p. 5).

We will begin our analysis by summarizing the ALJ's decision. Then we will address Plaintiff's first argument. We will not address Plaintiff's second or third arguments because we find that the ALJ did not adequately explain his evaluation of Dr. Cloutier's opinion. To the extent any further error exists, it may be addressed on remand.[28]

---

[28] *See Burns v. Colvin*, 156 F. Supp. 3d 579, 598 (M.D. Pa. Dec. 30, 2015) (Cohn, M.J.), *report and recommendation adopted*, 156 F. Supp. 3d at 582 (M.D. Pa. Jan. 13, 2016) (Kane, J.) (explaining that "[a] remand may produce different results on these claims, making discussion of them moot.").

## A.     THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In his January 2021 decision, the ALJ evaluated Plaintiff's application at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between May 14, 2019, (Plaintiff's application date) and January 12, 2021, (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 13; Doc. 12-2, p. 14).

At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: Diabetes Mellitus; Diabetic Neuropathy; Lumbar Degenerative Disc and Joint Disease, Status-Post Discectomies in 2016 and 2018; Cervical Degenerative Disc and Joint Disease, Status-Post Anterior Discectomy and Fusion of C5-C6 in 2020; Adhesive Capsulitis of the Left Shoulder; Obesity; Major Depressive Disorder; Bipolar Disorder; Posttraumatic Stress Disorder; Anxiety; Intermittent Explosive Disorder; and History of Substance Abuse in Full Remission. (Admin. Tr. 13; Doc. 12-2, p. 14). The ALJ also identified the following medically determinable non-severe impairments: Hyperlipidemia; Hypertension; Gastroesophageal Reflux Disease; Pancreatitis; Hepatic Steatosis; Insomnia; Headaches; Diverticulitis; and History of Kidney Stone. *Id.*

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 14-20; Doc. 12-2, pp. 15-21).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in sedentary work as defined in 20 C.F.R. § 416.967(a) except:

> the claimant is limited to frequent use of foot controls with the bilateral lower extremities. The claimant is limited to frequent reaching, handling, fingering, and feeling with the right upper extremity and occasional overhead reaching with the bilateral upper extremities. The claimant is limited to occasional reaching, handling, fingering, and feeling with left upper extremity. The claimant is limited to occasional balancing, stooping, kneeling, crouching, and climbing on ramps and stairs, but never climbing on ladders, ropes, or scaffolds and never crawling. The claimant is limited to occasional operation of a motor vehicle. He is limited to occasional exposure to atmospheric conditions, extreme cold, heat, wetness, and humidity, but can never be exposed to vibration and hazards, such as unprotected heights and dangerous moving mechanical parts. The claimant is limited to understanding, remembering, or applying simple instructions. He is limited to frequent interaction with supervisors, coworkers, and the public. The claimant is limited to performance of simple, routine tasks, but not at a production-rate pace, such as assembly line work. He is limited to simple work-related decisions with occasional changes in the work setting.

(Admin. Tr. 20; Doc. 12-2, p. 21).

At step four, the ALJ found that Plaintiff had no past relevant work. (Admin. Tr. 32; Doc. 12-2, p. 33). At step five, the ALJ found that, considering Plaintiff's

Page 14 of 22

age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 32-33; Doc. 12-2, pp. 33-34). To support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following two representative occupations: System Monitor, DOT #379.367-010; and Credit Checker, DOT #237.367-014. *Id.*

### B.   THE ALJ DID NOT ADEQUATELY EXPLAIN WHY THE ONE- AND TWO-STEP TASK LIMITATION WAS OMITTED

The evidence related to Plaintiff's ability to understand, remember, and carry out instructions is limited. In June 2019 and January 2020 Plaintiff indicated his impairments did not affect his ability to "understand." (Admin. Tr. 246, 290; Doc. 12-6, pp. 26, 70). His mental health records consistently document average intelligence. In June 2019 Plaintiff indicated his impairments did not affect his memory, but did report memory issues in January 2020. *Id.* His mental health records, however, document "intact" memory. In June 2019 and January 2020, Plaintiff reported that his impairments did not impact his ability to follow instructions. *Id.* He reported that he could follow written and spoken instructions "well" or "fine." *Id.* Each of the statements provided by Plaintiff were written on a check-box form by a third party, and included no supporting explanation about the

nature or degree of his limitations.[29] Plaintiff's ability to understand, remember, and follow instructions was not discussed during Plaintiff's administrative hearing.

In addition to these vague check-box forms, the ALJ had access to RFC assessments completed by medical consultants during the initial and reconsideration levels of review.

Dr. Chiampi evaluated Plaintiff's mental RFC at the initial level. His assessment is reproduced on a "Disability Determination Explanation" form as part of the 416-medical evaluation.[30] He provided the following narrative RFC assessment:

> This 44 y o claimant retains capacity to perform basic routine tasks in schedule. He should avoid complexities, high stress and high social demand tasks.

(Admin. Tr. 114; Doc. 12-3, p. 35).

Dr. Cloutier evaluated Plaintiff's mental health-related limitations at the reconsideration stage. Her assessment is also reproduced on a "Disability Determination Explanation" form as part of the 416-medical evaluation. Dr. Cloutier

---

[29] The June 2019 and January 2020 forms are written in the first person, but were completed by Diandra Rasmus. (Admin. Tr. 248, 292; Doc. 12-6, pp. 28, 72).

[30] *See* Social Security Administration, *Program Operations Manual System*, DI 24501.006 available at https://secure.ssa.gov/apps10/ (last visited September 25, 2023).

added her own narrative RFC assessment underneath Dr. Chiampi's assessment. It

appears as follows in the Disability Determination Explanation:

> RECON REVIEW: SYMPTOMS, TREATMENT FINDINGS, ADLS
> PARTIALLY CONSISTENT. CLM'S IMPAIRMENTS WOULD
> NOT PRECLUDE 1-2 STEP FUNCTIONS ON A CONSISTENT
> BASIS.

(Admin. Tr. 134; Doc. 12-3, p. 55) (capitalization in original).

The ALJ evaluated both RFC assessments under 20 C.F.R. § 416.920c. This

regulation requires the ALJ to articulate how he considered these RFC assessments.

To meet this obligation, the ALJ provided nearly identical explanations. Those

identical explanations did not address the "Recon Review" paragraph that Dr.

Cloutier added. Ultimately, the ALJ limited Plaintiff to the performance of simple,

routine tasks—a limitation that is less restrictive than one- and two-step tasks.

Both Plaintiff and the Commissioner argue that the limitations set out in the

two medical opinions are "uncontradicted."

Plaintiff argues that both opinions include a one- and two-step limitation, and

that remand is required because all medical sources set a more restrictive RFC than

the ALJ. (Doc. 13, p. 7) (arguing that the "opinions are uncontroverted and no

opinion suggests a greater level of functioning.").[31]

---

[31] *See also*, *Dennis v. Colvin*, No. 3:13-CV-2537, 2015 WL 1608714, at *8
(M.D. Pa. Apr. 10, 2015) ("Generally, an ALJ may not reject all of the medical

The Commissioner argues that both opinions limit Plaintiff to simple, routine tasks because:

> Dr. Cloutier's statement does not limit Plaintiff to only one-to-two step functions, but merely states that his impairments would not preclude them (Tr. 134). The RFC is statement on "the most" Plaintiff can still do despite the mental limitations caused by his impairments. 20 C.F.R. § 416.945(a) (defining the RFC as the most an individual can still do). Here, the ALJ agreed that Plaintiff's impairments "would not preclude" one-to-two step functions, but also defines the "most" Plaintiff can do as a range of simple work (Tr. 20).

(Doc. 16, pp. 12-13); (*see also* Doc. 20, pp. 3-4) (arguing that the plain meaning of the phrase "does not preclude" would not limit Plaintiff to the performance of one- and two-step tasks).

Although we do not seek to bind the ALJ to our interpretation of this evidence on remand, we disagree with both Plaintiff and the Commissioner's characterization of the medical opinions. As Plaintiff observes in his reply brief, a claimant's RFC is defined as "the most" a claimant can still do despite his or her limitations.[32] The Social Security Administration recognizes that state agency medical and psychological consultants like Dr. Chiampi and Dr. Cloutier are "highly qualified medical sources who are also experts in the evaluation of medical issues in disability

opinions in the record and assess an RFC that is greater than found by the medical professionals.").

---

[32] 20 C.F.R. § 416.945(a)(1).

claims under the Act."[33] We therefore may reasonably presume Dr. Chiampi and Dr. Cloutier are familiar with the Administration's definition of an RFC assessment, and intended their narrative assessments to set out the most Plaintiff can do.

"[T]he distinction between an RFC for simple, routine tasks (as found by the ALJ here) and one for one -to- two-step tasks is unsettled in the Third Circuit . . ., [however] the majority of courts have found the distinction to be meaningful."[34] We agree that a limitation to one and two-step tasks is more restrictive than a limitation to "simple" tasks, and therefore find that Dr. Chiampi's RFC assessment (limiting Plaintiff to routine tasks, and suggesting Plaintiff avoid complexities) is less restrictive (in terms of the complexity of tasks) than Dr. Cloutier's RFC assessment (limiting Plaintiff to one- and two-step tasks). Thus, these two opinions conflict on this issue.

The Commissioner argues in the alternative that the ALJ's decision should be affirmed because the ALJ was not obligated to adopt every limitation in Dr.

---

[33] SSR 17-2p, 2017 WL 3928306, at *3.
[34] *Stine v. Kijakazi*, Civ. No. 21-5492, 2023 WL 3483885 at *9 (E.D. Pa. May 15, 2023) (citing *Maher v. Saul*, Civ. No. 19-5721, 2020 WL 5876808, at *5 (E.D. Pa. Sept. 9, 2020) (limitation to "simple, routine, repetitive tasks" is not the same as more restrictive limitation to "one- and two-step tasks") *report and recommendation adopted* 2020 WL 5849466 (E.D. Pa. Oct. 1, 2020) and *Podunajec v. Saul*, Civ. No. 19-1938, 2020 WL 7319779, at *6 (M.D. Pa. Dec. 11, 2020) ("[T]he Court finds that there is a significant difference between an RFC limitation to one and two step tasks and an RFC limitation to simple routine tasks.").

Cloutier's assessment despite finding it "persuasive" and that substantial evidence otherwise supports a limitation to simple, routine tasks. We are not persuaded.

Although the Commissioner is correct that an ALJ is not obligated to adopt every limitation in a persuasive opinion, the decision to do so is not exempted from the well-established principle that the ALJ is required to "give some indication of the evidence which he rejects and his reason(s) for discounting such evidence."[35] The limitation in Dr. Cloutier's assessment is relevant and probative evidence, and the ALJ neither acknowledged this alleged limitation in the decision nor explained why it was omitted from the RFC assessment. Moreover, the record as a whole could be viewed as equally consistent with both a "simple task" limitation and one- and two-step task limitation, making an explanation even more crucial.

Regarding the Commissioner's argument that substantial evidence otherwise supports the RFC assessment, we are similarly not persuaded. An ALJ's decision must stand or fall with the reasons set forth within it.[36] If an ALJ's evaluation of relevant evidence is not adequately explained, "to say that [an ALJ's] decision is supported by substantial evidence approaches an abdication of the court's duty to

---

[35] *Burnett*, 220 F.3d at 121 (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) and *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).

[36] *Keiderling v. Astrue*, Civ. No. 07-CV-2237, 2008 WL 2120154, at *3 (E.D. Pa. May 20, 2008).

scrutinize the record as a whole to determine whether the conclusions reached are rational."[37] In the absence of some indication as to why the one- and two-step task limitation was rejected, we "cannot tell if significant probative evidence was not credited or was simply ignored," and are unable to conduct meaningful review of the ALJ's conclusion.[38] Therefore, we conclude that remand is required for further evaluation and explanation.

Although we conclude that remand is warranted, we note that nothing in this memorandum opinion should be deemed as expressing judgment as to how the evidence should be interpreted or on what the ultimate outcome of the ALJ's reevaluation of this case should be. This task is the ALJ's province and duty.

[The next page contains the Conclusion]

---

[37] *Fox v. Kijakazi*, No. 3:18-CV-1486, 2021 WL 5441509, at *2 (M.D. Pa. Nov. 19, 2021) (quoting *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979)).

[38] *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

## V.   CONCLUSION

Accordingly, we find that Plaintiff's request for relief be GRANTED as follows:

(1)    The final decision of the Commissioner will be VACATED.

(2)    This case will be REMANDED to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

(3)    Final judgment will be issued in Plaintiff's favor.

(4)    An appropriate order will be issued.

Date: September 27, 2023                    BY THE COURT

                                            _s/William I. Arbuckle_
                                            William I. Arbuckle
                                            U.S. Magistrate Judge

Page 22 of 22